Benton, I do not see Judge Gross. Okay. I would like to point out to the panel that Attorney Bruno was listed under Diana Vogt. They are sharing a location. Sure. And then Ms. Taylor is also sharing a location and you'll see her under Ryan Wiesen. Great. Appreciate the attorney's efficiencies. Okay. Mr. Bruno. Mr. Bruno, you're recognized. All right. Thank you. Good morning. May it please the court. My name is Jason Bruno and I'm here on behalf of the appellates, the Metropolitan Omaha Property Owners Association, Pierce Carpenter and the Hillcrest Departments. We're here today asking this court to reverse the decision of the district court and then join and declare unconstitutional the City of Omaha's rental registration ordinance. That ordinance requires mandatory inspections of all residential rental properties in the City of Omaha as a condition to being able to rent those properties. We're ultimately asking for the ordinance to be struck down for numerous reasons, but I wanted to start with one in particular because I think there is a fatal flaw in the ordinance that is clearly dispositive in this case. If you read through the ordinance, it permits punishment simply and solely for exercising a constitutional right, the fourth amendment right to refuse to consent to a warrantless search. Okay. I've got the, I have the ordinance here in front of me. Tell me where it is. Okay. If you look at 48206C, it talks about punishment and when and how the landlord and or the tenant are exempted from punishment. Well, if you read through there and if you follow through what could happen, if the City of Omaha goes to a landlord under the ordinance and says, hey, I want to inspect your rental property, the property owner could say, no, you can't have consent. At that moment in time, the city has the option, not the obligation to go to try to obtain a warrant from the court. Here's the key point. If the city goes and ultimately obtains that warrant and inspects the property, the property owner is not immunized under the ordinance from punishment. Instead, the ordinance is written, authorizes and permits punishment, a retroactive punishment upon the property owner simply for refusing to give consent to conduct a warrantless search. Is that a negative inference from the statute? I don't believe it's an inference at all. It's clearly permissible that that could happen because there is no immunity granted to the landowner. It's not an inference because if that was exempted conduct, it would specifically say so in the ordinance because there are certain exemptions. For example, if the City of Omaha goes and is unable to get a warrant, then it cannot punish the landlord. But it's the opposite in the event a warrant can be obtained. So the ordinance permits punishment simply for exercising a constitutional right. And that makes it unenforceable. I'm sorry, Your Honor. Well, I don't know whether you can hear me or not. You can hear me? Yes, I can. Okay. Standard video conference question. But tell me, I'm looking at the language of C. I don't see, pardon the pun, I don't see where it says that. It doesn't say directly. It works the opposite. It exempts the circumstance. So it is, in fact, a negative entrance. Correct. Yes, it is. It is, but that's appropriate for statutory interpretation because the city intentionally put in there what was exempted, what punishment was exempted. For example, a landlord can't be punished if the tenant refuses to consent. What about the general principle that if there are two interpretations of a statute or an ordinance, one which would require an unconstitutional result, one which would not require a unconstitutional result, that we are supposed to interpret the statute or ordinance, silence or ambiguity, in favor of a constitutional result? That doesn't apply here because you have to assume that the city purposely included the specific exemptions and the acts that would exempt a landlord from punishment. They have purposely and specifically delegated those items. What they do not do is immunize a landlord in the event that the city goes in and tries to obtain a warrant and obtains a warrant. Under that circumstance, the city can and is empowered under the statute to impose severe and basically unlimited punishment, including criminal penalties. And because of that ability to retroactively punish somebody from exercising their constitutional rights, the ordinance as a whole is fatally flawed without more. But that doesn't end our argument. Yes. Counsel, under the scenario that you've described, would that need to be brought as an as applied challenge by someone faced with that situation rather than as a facial challenge? I don't believe so, your honor. I think it could be facially applied. And because one of the reasons is if you look at the other case law, this really isn't a decision here. I mean, basically, the landowners have to capitulate for fear of punishment. And in this circumstance, the city had its opportunity to provide immunity or what specific acts cannot result in punishment. They didn't do that in this case. So on its face, the statute is constantly impermissible. And if this court wants to go further beyond that, there are other reasons why, including because the statute violates the unconstitutional conditions doctrine. It is basically well set a law, including from this court, that a government entity may not condition the grant of a privilege upon the surrender of a constitutional right. That is exactly what the ordinance does in this case. The only way someone could rent residential property in the city of Omaha is to agree to forfeit their fourth amendment right to refuse to consent to a warrantless search. And this argument depends on the other argument you just made, right? You're still dealing with the same section? No, I don't think the other argument depends on anything. I think the other argument is completely dispositive because the ordinance... Yeah, but counsel, I don't think you're following me. Tell me a different section. If you're referring to other language in the ordinance, tell me which other section you're talking about where it imposes an unconstitutional condition. The entire structure of the ordinance, your honor. That's how it was designed. It's designed for the whole purpose because... Let me interrupt you then. What's the constitutional right you're giving up? The ability to refuse to consent to a warrantless search. That's the constitutional right. Okay, well, I think that's in C, right? Then C is the anchor of this. 48-206C is the anchor of it, right? No, there's two. There's actually two, your honor. And I don't agree that C is just the anchor. It's one of the anchors. What's the other anchor? That's exactly my question. What's the other anchor? See, I can't tell you, your honor, because to me, I don't limit it. I think it's the entire structure of the statute. Okay, go ahead. But if you look at it, the Fourth Amendment right against unlawful searches isn't a trivial right. It isn't a second-class right. It's a fundamental right. And as this court has said, at least in its decisions, uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government. So we think that's where this court should begin its analysis, since what right is this ordinance taking away as opposed to what rights is it leaving? The ordinance here produces a result. That result is warrantless searches. The city Doesn't the ordinance require either a warrant or consent by somebody in possession or ownership of the property? Absolutely not. And that's one of the problems why this ordinance is fatally flawed. It includes language about how the city inspector may go apply for a warrant, but it doesn't require the city inspector to apply for a warrant. So if you look at the case our position, because in that, there was a mandatory requirement that entitled the owner to pre-compliance review to determine the purpose, scope, and proprietary of the inspection. So you read that as not permissive to allow the agent of the government to go seek a warrant, but instead that they may just search anyhow, warrant be damned. That's exactly how we read it. And if you look at the other provisions of the statute, there are a lot of instances where it says shall. It doesn't say that in this case, the city is ambiguous itself. And, you know, we can go into that, but we have that debate quite frequently because shall may be either permissive or mandatory depending on the context and depending on how it's used. Now it's just a plain old rule of grammar and the lawyers that believe that shall means must are wrong. So I won't, I don't, and may is of course even more ambiguous than shall. And so I'm not, I mean, it seems to me that you read this ordinance, that it seems to say get consent or get a warrant. And your honor, the simple solution to that is that's what the city wanted it to say. That's what the language should be. And the city should have gone a step further and said that absolutely no inspection may take place until and unless a warrant is obtained pursuant to state statute or other applicable law. Why does it say that? Counselor, let me ask you this. If the city of Omaha has already given it that construction, which prohibits them from doing an inspection without consent or a warrant, haven't you already won that issue as a practical matter? No, because that's not binding on anything, your honor. They didn't change the language of the statute. They could still enforce it as written. Anything they say in arguments in this case is not binding on the city or other individuals. And the simple solution is we shouldn't be arguing about it. This is a statute that is imposing upon fourth amendment rights. The language should very simply say shall. And the reason it doesn't... Let me interrupt you. What about the district court's opinion? You previously had a decree and now you've got a district court opinion. Can't your clients all interpret that to say what you're saying? No, absolutely not. That will not hold up in court. But more importantly, when do tenants or landlords have to come in and exercise this right? Do they have to file a lawsuit and say, well, in this other decision three or four years ago, the city acknowledged that maybe the language was improper or they constructed it differently. The law is still existing as written and there's nothing stopping it other than this court through an injunction from without a warrant requirement. And our argument is, well, one of the reasons it's written that way is because the city designed this law and implemented this law to get around the previous restrictions that were in place under the state statute and under the Omaha municipal code as previously written. So that's one of the reasons we don't think that's ambiguous. We think the city meant to do it and they very easily could have made a mandatory warrant requirement and implemented into the language of the ordinance, which they did not do. And if you look at the case law that we cited, you need some sort of mandatory warrant requirement that people could rely upon. If you look at the ordinance, who is supposed to institute the procedure? Are the property owners or the landlords, do they get to be involved? When does it have to be done? What is the burden of proof? What are the elements to support a claim? Is there an appeal right? None of those things are set forth in the statute. It does reference a Nebraska statute and it says ETSEQ after that reference, which as you know can be one section of the code or it can be several titles in the tax code, trust me. It could be books and books and books that are in the ETSEQ. So how about Nebraska statute section 29830 ETSEQ period? Yeah, that specifically sets forth a procedure for conducting an inspection, a property code inspection. That's another reason why we argue this law is unnecessary and it doesn't matter. But going to my first point, even if that's true, even if there's a mandatory warrant requirement. I know you can see my three fingers or not, but you're into your rebuttal time, but it's up to you to use now or later. And I just want to get one more point. Even if that's true and there is a warrant requirement, the city still could punish landowners in the event they require the city to go through that process. And that right there requires the ordinance as a whole to be invalidated. I will save my remaining time. Thank you. Thank you, counsel. Ms. Taylor. Good morning, your honors. I'm Jennifer Taylor on behalf of the city of Omaha. And I would respectfully request the injunction and grant of the city's motion to dismiss. The previous conversation with Mr. Bruno identified exactly the issue at hand here. 48206C is really the issue that has been made central to this entire argument. Now, this provisions in 48206C states very clearly that the notice of the inspection checklist in the form for the tenant to sign to consent entry into the rental dwelling shall be sent, and that if either the owner or tenant of the relevant rental dwelling refuses to consent to an inspection, the code official may obtain a warrant or other court order for the inspection in accordance with applicable law, including Med-El Limitude, Nebraska Rights Statute, sections 29-830. Now, some of the conversation that was had with Mr. Bruno discussed why the death say may versus shall. And if the city wanted to require a Now, the Rental Registration Ordinance, the RPRIO... How about must? Would you buy must? I would buy must, but I think the fact that it says in accordance with applicable law and states applicable law dictates that a warrant requirement is present and must be obtained if the city wants to inspect a unit in the absence of consent. Now, the two programs that are available under the RPRIO are an annual inspection program and a 10-year inspection program. To say that the city shall pursue a warrant in the event that consent is not obtained would require the city and take away from the city the opportunity for the city to make a decision as to whether or not it wanted to inspect that unit, a different unit, or defer inspection altogether as allowed pursuant to the ordinance. The reason that the may is in here allows the city to make efficient uses of city resources to make decisions about how it wants to proceed. The may doesn't allow the city to disregard Nebraska statutes, disregard section 48-34 which requires inspections to be conducted pursuant to the fourth amendment. That may doesn't override all of the other surrounding and existing law. It says exactly what Judge Erickson commented, consent or warrant. If you don't have a consent, you must go get a warrant. Now, if the city chooses not to proceed to getting warrant, then the city may not inspect that unit, but it's up to the city to decide whether or not it wants to undertake the cost, expense, and resources to pursue a warrant or simply forego that inspection. Counsel, pardon my ignorance, but does 29-830-ETSEC, does that mention warrants at all? Yes, it requires all inspections to be conducted pursuant to the fourth amendment and in the tenant or the owner that the city must go get a warrant. The state statute references the fourth amendment? Yes. Okay, and does it talk about an appeal? The state statute, I'm not right off the top of my head to know if it talks about appeal, but the RPRIO does actually provide provisions for an appeal within the text of the code. So, section 48-208 is titled enforcement and appeal and it states specifically that any person agreed by any decision or order by the city under this article may appeal the same to the property maintenance appeals board in the manner provided in chapter 48 of this code. The property maintenance appeals board was actually created pursuant to the consent decree and settlement agreement entered into between Appellant Mopoa and the City of Omaha in 2015. So, there's a procedure set forth in the RPRIO. Counsel, let me ask about that. It seems to me that the genesis of this suit is that there was this binding consent decree in place and then all of a sudden the regime changed and the appellant feels that there's a conflict between the two. Can you address that? Yes, your honor. The appellant feels that there's conflict between the two and has repeatedly stated in briefs that they bargained for the city's agreement to not enter into or undertake a settlement agreement. What this appellant argues exists does not exist in the four corners of the settlement agreement. Nothing in the settlement agreement or the consent decree prevents the city from undertaking additional means and methods of conducting inspections as long as those inspections comply with the fourth amendment. In fact, what the appellant bargained for in the settlement agreement and the consent decree was that all inspections must be conducted in compliance with the fourth amendment. Since the RPRIO requires either consent or a warrant, it is in compliance with the fourth amendment and the property owner's rights that were protected through the settlement agreement and consent decree are not violated. The other argument... Counsel, let me interrupt for a simple point that I hadn't thought of till right now. Has anybody ever gone back to the court for enforcement, interpretation, or anything else, sanctions, contempt, or something on the consent decree? Not specifically for sanctions or contempt. However, the district court that made the decision in this case was the district court that entered the consent decree and approved the settlement agreement. So the district court was very familiar with... Yeah, but does the district court, pardon my ignorance again, do you think the district court thought it was acting on the consent decree or acting on a separate lawsuit? Tell me what you think. I believe the district court thought it was, it actually specifically found that it was acting under a complaint pursuant to the consent decree. They determined that the appellant's argument was an argument under the consent decree for breach of that consent decree. Counsel, let me follow up on that if I could. Let's suppose there was a conflict. Who was bound by the consent decree? Who were the parties to it? The parties bound by the consent decree are MOPOA, one of the appellants in this matter, and the city of Omaha. Well, in that regard, does that include the city council? It includes the city council to the extent that the city council was bound to adopt various code changes pursuant to the consent decree and the city of Omaha planning department was required to adopt certain standard operating procedures. However... The reason I ask the question is that, at least on the state level, I know you cannot bind future legislatures. Can you bind future city councils? No, you cannot, your honor. So, in fact, to give the settlement agreement and reserve powers doctrine and it would require... Let me interrupt you. Is there in your state, there is in some states, you don't need a lecture on that. I'll just ask you about Nebraska. Does Nebraska have a law or a provision in the constitution that says that's either true or untrue, what you just said about binding the future? I believe so, but I'd have to go back to my brief. Okay, thank you. Proceed. That's all I wanted to check on was your assertion. No problem. Regardless of whether or not there is a constitutional provision regarding the reserve powers doctrine, the actual restriction that the appellant's state exists as far as not being able to implement a rental registration program does not exist within the four corners of the settlement agreement. The appellants actually base their argument on the fact that the standard operating procedure adopted through the settlement agreement requires certain information to be taken when the city takes a complaint. So when someone calls the city of Omaha and complains or reports a purported code violation, there is a certain set of information and a certain manner in which they must do that. And in order for the city to investigate a purported code violation, those provisions must be met. Nothing in the settlement agreement or in that standard operating procedure prevents the city from inspecting properties outside of the complaint procedure. For example, through consent or through a warrant or through a properly valid constitutionally binding program. So as the court correctly identified, the real issue that the appellants have with the rental registration ordinance here is in 48206 subsection C. And I think it's clear that the city does not intend to penalize anyone for refusal of consent. It's consent or warrant. Now, they also... Kansas doesn't say that. It does not say that except for the fact that it says either you get consent or you get a warrant. Other provisions of chapter 48, specifically 48-34, the provision that was added to the Omaha Municipal Code pursuant to the settlement agreement and consent decree specifically says... So do you feel that the city of Omaha is bound to that interpretation? Yes, I do. And the city of Omaha is bound to that interpretation. It is consent or warrant. Consent is granted by the person with the right to privacy in the dwelling unit. Whether that person is the tenant or the occupant of the unit, which is specifically provided for both in Nebraska Revised Statute and in Omaha Municipal Code section 48-34, or the property owner, the person with the right to privacy and the right to refuse consent of the relevant dwelling, as indicated in 48-206C, can refuse consent to inspection. If that occurs, the city must procure a warrant in order to inspect that unit. In the event that, for example, with a 10-year inspection program, the city has another five years to conduct that inspection, the city may opt to not pursue a warrant and inspect that unit and defer that inspection to a later date and time. What this allows for is the city to, as I mentioned earlier, provide for an economic use of city resources and it allows for the city to make decisions about how it wants to proceed. If the word shall were in there, then any time the city attempts to inspect a unit and said consent is and required to undertake that inspection. It should be the city's discretion as to whether or not it wants to inspect that unit pursuant to a warrant. Regardless, the Fourth Amendment requires, and most of the case law regarding rental inspection programs, requires a warrant requirement and in the event of any ambiguity, the ordinance should be construed to have that warrant requirement. In fact, actually this court in Rosman v. City of Columbia Heights back in 2001 acknowledged that the district court in that case construed the ordinance to require a search warrant in the absence of consent. So the fact that the ordinance can easily be read to require a warrant and should be construed to require a warrant means that the ordinance requires either consent or a warrant in order to inspect a unit. Is that case in your brief? That's what I was and I'll move on briefly to the Unconstitutional Conditions Doctrine because that was raised by appellants as well. An appellant's reply brief actually, they pointed to a case out of Florida from last year called Lee Family Partnership versus the City of Temple Terrace and in that case the court found that the ordinance in question, a rental registration ordinance, did violate the Unconstitutional Conditions Doctrine. However, the ordinance in question stated specifically and I quote, by applying for a permit the property owner consents to periodic inspections of the dwelling units. So in the actual text of the ordinance, the text of the ordinance required consent to warrantless searches in exchange for getting a permit. No such language exists within the RPRIO. No such even remotely similar language exists in the city's ordinance. In fact, the obligation to inspect, if you look through 48-206 the inspection program, places the burden for inspections to be performed on the city. There is no obligation specifically identifying the landlord or the property owner as having an obligation under 48-206. So even if it were, even if a property owner were to say refuse consent to inspection for a unit in which it has the right to privacy, the city would, as we discussed, be obligated to get a warrant. If the city is unable to get a warrant or the city chooses not to get a warrant, the property owner is not penalized by the plain language of the statute. Lastly, I think I would also point out that the appellants argue that the RPRIO is unconstitutional as it is void for vagueness. The void for vagueness issue actually comes from 48-204 and the ongoing compliance that's required of property owners. But in that section, property owners are required to simply adhere to and apply or adhere to and abide by existing laws as implemented by the legislative bodies. Council, I think you're getting to this point, but why is this not a penal statute? Why is, oh why is that, is 48-204 not a penal statute? Yeah, in order to be void for vagueness don't we have to be dealing with a penal statute? Yes, you do have to be dealing with a penal statute and actually the section cited by appellants as being void for vagueness only deals with the actual effectiveness of registration. That does not actually deal with a violation of the ordinance as it's presented. It simply says that in order to maintain an effective registration, you must comply with all relevant and applicable law. So as the court noted, the issue really here is the text and context and content of the plain language of section 48-206 subsection C. And it really comes down to does that section require the city to either get consent or a warrant in order to inspect a rental dwelling? And I believe the plain language of the statute clearly indicates that it does and in the event court were to find any ambiguity in that particular section, I think Supreme Court jurisprudence requires us to construe that statute to not have such an ambiguity and to be constitutional, therefore requiring a warrant. Thank you for your argument. Mr. Bruno, you have rebuttal time. Mr. Bruno, you're muted. Thank you. I think the city is trying to retroactively change the language of the and that is not appropriate. For example, 48-206 subsection C, what the city is claiming it should say could very easily have been written as followed. If consent is refused and the city still wishes to proceed with an inspection, it must obtain a warrant or court order in accordance with applicable law. That's what it should say. That may make it constitutional. That is not what it says. My second argument is even if there is a warrant requirement, this ordinance still must fail because the city could penalize the landlord simply for exercising its right. And if you look at the district court's order, document 23 page 6, the court cites a case that says the imposition of a penalty upon a landlord for renting his premises without first consenting to a warrantless search violates the property owner's Fourth Amendment rights. That's a quote from a district court and that's what exactly could happen under this ordinance and why it's unconstitutional. Going to the last point, the consent decree required several constitutional safeguards. There needed to be a valid complaint that was signed with a telephone number of the person making it. It needed to be a specific accusation of a code violation and then the city could still only inspect either with consent, emergency circumstances, or obtaining a warrant based on probable cause. And if you look at our briefings and the evidence we offered in support, it's our allegations that the city specifically designed this ordinance in order to sidestep or get around those constitutional protections and be able to inspect any property they wanted in the city of Omaha without probable cause and that's why it's unconstitutional. We would ask that the ordinance be stricken. The city could always rewrite it to have it say what they're claiming it says now. Okay, thank you both for your arguments.